The judgment of the court was pronounced by
Preston, J.
By the 4th section of the act approved the 20th of March, 1839, incorporating the town of Shreveport, the General Assembly declared that the trustees of the corporation should have the exclusive right to establish such ferries across Red River, within the limits of the town, as they may deem expedient, and to apply the revenue arising therefrom to the improvement of the same.
In 1843, the parish of Bossier, on the opposite side of the river, was created, and power was given to the parish to establish ferries across the lakes and rivers within the parish. A ferry was established under this authority across Red River, immediately opposite Shreveport. A contest arose between the lessee of the corporation of Shreveport and the lessee of the parish of Bossier, and it was determined by this court in 1847, that the exclusive right of the town of Shreveport to establish ferries within the limits of the town was not repealed by the authority given to the parish of Bossier. Thereupon, the Legislature passed a law approved the 16th March, 1848, which provided in substance, that the Police Jury of the parish of Bossier should be entitled to receive from the Mayor and Trustees of the town of Shreveport the one-half of the net proceeds of any ferries established by them at Shreveport across Red River, and that the Police Jury of the parish of Bossier should have equal and concurrent jurisdiction in regulating the rates of ferriage, and, for this purpose, should meet, if they thought proper, the mayor and trustees once in each year in the town of Shreveport. Under another section of the act, the Police Jury of Bossier have brought this present suit to enforce the provisions of this law and to recover.
The defendants resist this demand substantially, on the grounds that the grant to them of the exclusive right to establish ferries within the limits of Shreveport, was not a mere gratuity, but was given under the obligation of improving the sheets and landings of the town, to effect which they have expended large sums of money, thereby making the grant a contract by onerous conditions performed, and, by which means they acquired a vested right to the exclusive privilege, which is protected by the 109th article of the Constitution of the State, and by the 10th section of article 2d of the Constitution of the United States.
The Legislature, in incorporating the town of Shreveport, gave to the mayor and trustees, the usual powers given to all municipal corporations to improve the town, but did not bind them to make any particular improvements, or to expend any particular amount, leaving the whole to their own j udgment, to be governed by what the interest and convenience of the inhabitants might require. In the act no obligation is expressly imposed upon the town of Shreveport to provide ferryboats or to employ the necessary hands to keep ferries. No onerous conditions are imposed, as not to delay passengers, under penalties. The town is not even obliged to cross the passengers at all. No rates of toll are prescribed and greater rates prohibited. If the Legislature had made such a grant to an individual, and he should have exacted exhorbitant tolls, surely a future Legislature might have fixed and reduced them to reasonable rates. The grants of ferries have always been for limited periods, ordinarily five, ten or fifteen years. The ‘Legislature have fixed no term at which the exclusive right of the town of Shreveport to the revenue from the ferries should cease. As there is not in the law *665 itself any restraint upon future Legislatures to limit or even repeal the law granting the exclusive right, they might undoubtedly do so, unless clearly pro- ■ hibited by the constitutional provisions invoked by the defendants.
The State did grant to the corporation of Shreveport the exclusive right of establishing ferries within the limits of the town, and of applying the revenues (without any consideration, however, inuring to the State,) in aid of the municipal improvements. The sole question which the case presents is, whether the State could afterwards grant to the parish of Bossier, having the jurisdiction over the opposite side of the river, the right to participate in the regulation of the intermediate ferries and to share in the net profits.
The judge of the district court has placed the case on the true grounds. The questions as to the violation of contracts or vested rights under the Constitution of the United States, or of the State, does not arise. Those questions grow entirely out of the violation of contracts with, or the vested rights of individuals or private corporations established for individual profit.
The corporation of a town is established for public purposes alone, and to administer a part of the sovereign power of the State over a small portion of its territory. It is created by the Legislature and is entirely subject to Legislative will.
This court held, in the case of the Louisiana State Bank v. The First Municipality of New Orleans, that the government of cities and towns, like that of the police jury of parishes, formed one of the subdivisions of the internal administration of the State, and was absolutely under the control of the Legislature ; and in the case of Reynolds v. Baldwin, that the laws which establish and regulate municipal corporations, are not contracts, but ordinary acts of legislation, and that the powers they confer are nothing more than mandates of the sovereign power, and that those laws may be repealed or altered at the will of the Legislature ; except so far as the repeal or charge may affect the rights of third persons acquired under them. We adhere to these opinions.
The Legislature, in the exercise of its sovereign power to regulate femes, gave the revenues accruing from the ferry in controversy in aid of the improvements of the town of Shreveport, but without any consideration inuring to .the State, or onerous condition imposed upon the town. It could, therefore, take those revenues, or a portion of them, from the town and appropriate them to other neccessary purposes. It was very equitable to allow the parish on the opposite side of the river to participate in the profits of the ferry, after paying for the boats and hands as a consideration for keeping up the great highway leading to the ferry, and the Legislature have, by the law in controversy, done nothing more than make this equitable regulation.
But the privilege of establishing ferries and deriving revenue therefrom, was given by a law which the Legislature, in passing, did not deprive themselves by express or implied contract of the power of repealing or altering it at will. If they did so by implication, the argument of plaintiff’s counsel would be conclusive, that the exclusive grant to Shreveport would be unconstitutional; for the original grant of the right to establish ferries at the place in question and derive revenues therefrom, belonged to the palish of Natchitoches; then it was given jointly to that parish and Claiborne; then to Claiborne and Caddo; then to Shreveport exclusively; which grant is unconstitutional, and all those preceding it, except the original grant to Natchitoches, if the law in controversy giving a part of the revenues to the parish of Bossier be unconstitutional.
*666 The prayer for general relief, at the end of the petition, covers the error in the prayer for a specific sum less than the amount due, as alleged in the petition and allowed by the judgment. Bradford's Heirs v. Clark, 7 L. R. 152. Smith v. Cochran et al. 7 L. R. 51.
It is therefore ordered, adjudged and decreed, that the judgment of the district court be affirmed, with costs.